The next case is number 21-1862 United States v. Howard John. At this time, if Attorney Hossein would please introduce herself on the record to begin. May it please the Court, Samia Hossein for the appellant, Howard John. I would like to request two minutes for rebuttal. Yes, you may have it. Thank you, Your Honor. I would also like to use my time today to address Mr. John's reasonable expectation of privacy in his laptop case, and rest on the briefs regarding the merits of his Fourth Amendment argument, which the District Court did not reach. Mr. John had a reasonable expectation of privacy in his laptop case, which he retrieved from under an armoire in the home he previously shared with his girlfriend and son. Because he hid the item from view, he exercised his control over it, and he was in the process of removing his belongings from the premises. So if she had said, get out and never come back, and he bullied his way in, does he still have a reasonable expectation of privacy? Your Honor, our position is that the analysis of the case kind of stands apart from Mr. John's personal reasonable expectation of privacy to be personally present within the apartment. If you don't have a right to be in the apartment, it's not a reasonable expectation that you can store your belongings somewhere. Well, he had some ties to the apartment, and this was a scenario in which he was... But there's no factual development as to what happened, because the defendant chose to rest on the record without supplementing it any further. Yes, Your Honor. We have relied on the police reports, but we believe there are sufficient facts in the police report to support a finding of a reasonable expectation of privacy. We know from the reports that Mr. John had lived in the apartment in the past, that his girlfriend and son continued to live there, and that he had a number of belongings present in the apartment, which had remained undisturbed by Ms. Bryson. We know that there was a black backpack. She referred to belongings in plural. She stated that he took bags in plural to his vehicle, and of course, we understand that there was the laptop case. Mr. John took special steps to conceal the laptop case, as well as the contents of that case, underneath an armoire, and Ms. Bryson... I'm sorry, counsel. Most laptop cases aren't locked. This is a house with a kid in it. This is a case that has half of a dangerous weapon and ammunition in it. It's down, it's true, it's stuck under an armoire, but where do you think kids look for things? I don't see how there's any argument that he had an objectively reasonable expectation of privacy in the contents of the bag, and you didn't put in any evidence that supports that. So, from the police report, what do you have? We have that the laptop case was closed, and that it was underneath the armoire. Ms. Bryson said she had never seen it before. She said it didn't belong to her. She stated that Mr. John arrived at the apartment to gather his belongings. We know that, again, there were other belongings present, which Ms. Bryson had left undisturbed. This was sort of a common scenario in which there are two people who are in a romantic relationship. One of them kicks one of them out, but they have a son together. They had been living together. He left some things behind, didn't take them immediately, but came back to retrieve them. And the fact that Ms. Bryson left those other belongings undisturbed made it reasonable for Mr. John to expect that his laptop case would also remain private. But he didn't take the laptop case to the car. He put it out on the kitchen table. And then he gets in a fight and beats up the mother of the child, and the child tries to intervene. And then there's a knife fight, and there's blood over everything. So aren't those pertinent facts? Judge Talabani certainly thought so. Mr. John has not disputed or denied any of the facts in the police record, including those regarding the altercation. But the analysis of the case in terms of Mr. John took it out from under the armor and didn't immediately take it to the vehicle, he was taking multiple belongings to the vehicle. He did remove the gun. Even those who have the gun in there? Well, the analysis is what the police knew at the time of the search. The child told the police that he had seen a gun on his person and in a black bag. That's correct, Your Honor. The child stated that, again, this is a six-year-old child who had just seen a violent altercation between his parents. And as Judge Lynch pointed out, he was hurt in that incident as well. So the reliability of those statements, I think, are called into question. But he specifically stated that there was a gun on Mr. John's back. The police, Pat Frist, Mr. John did not find a gun there. He referred to a black backpack and he referred to a suitcase. Our position is that those statements do not amount to probable cause that police would have had cause to believe that there was a firearm in the laptop case itself. Ms. Bryson didn't corroborate any of... So a six-year-old should have had more words to describe the difference between a laptop and a backpack? Well, Your Honor, I think words have meaning even from a six-year-old. And a suitcase is different from a laptop case. A backpack is different from a laptop case. Ms. Bryson didn't corroborate any of that. A laptop is a little suitcase. It certainly is. In our view, there is a difference. A suitcase is large. It often has wheels. And most of the police... I thought the district court said you didn't put in any evidence. So it was a little unclear exactly what the container was that this was in. And therefore, the district court was simply going to refer to it as a case. And you have described it as a laptop case. It was referred to in the reports in a variety of different ways. The most specific description was that it was a Targus laptop case. And, you know, most of the boy's statements referred to a backpack and referred to a gun being on Mr. John's back. There was no gun found on his person. Which makes it logical to think that the gun may be somewhere else on the premises and the mother is sufficiently upset about that that she asked the police to please check and be sure there's no firearm there. And she gives consent to the search. She did give consent to a search of her apartment. But that consent did not extend to the laptop case, which she made clear did not belong to her. So she didn't have a... Which was out in plain view and unlocked. It's closed. It didn't have a lock on it. But in Infante Ruiz, this court determined that even where a closed container, if I may complete this answer. Yes, go ahead. Thank you. Even where a closed container, in that case it was a briefcase in the trunk of a vehicle that was shared with other people. The defendant wasn't present at the time of the search. He still had a reasonable expectation of privacy even where that parcel was accessible to others. Okay, thank you. You've reserved two minutes. Thank you. Thank you, counsel. At this time, Attorney Crum would go ahead and introduce himself on the record to continue. Your Honor, please, the Court. Randall Crum on behalf of the government. Just starting with the idea of the bare issue of standing and establishing a reasonable expectation of privacy. The burden of the... Mr. Crum. Yes. I thought the Supreme Court, 20 years ago, told us not to use the word standing, to use the word reasonable expectation of privacy, both subjective and objective. Your Honor, I followed the usage of the district court in this case, and as I noted, this court has occasionally done so too, noting the Supreme Court's preference for other terminology, but that courts at every level continue to use the terminology of standing probably because it's a shorter thing to say. But referring to it as a reasonable expectation of privacy, the defendant's burden is to establish either by undisputed facts or facts that they are able to establish at a hearing, sufficient information to find a reasonable expectation of privacy under the factors that this court and other courts have deemed essential to that analysis, and that includes ownership, possession or control, historical use, ability to regulate access, and the totality of the circumstances as were set forth in Aguirre. And the problem here is just a failure across the board to give the court any of those factors it would need to understand it and conduct that analysis with respect to the backpack as it stood on the day of the search. And that is noted by the district court in its opinion. It had no information of the circumstances under which he once lived there, when those circumstances ended, when that living arrangement ended, and the circumstances of how it ended and whether he was told to take things with him and didn't, or simply left them behind, or left them behind with permission. And given the complete absence of any of those factors essential to the analysis, there's simply no ability to establish the reasonable expectation of privacy. And attempting to argue otherwise in the brief, defense tries to encourage making of certain inferences that this was a typical case of a person who was kicked out after living somewhere for a while and left things behind. But those are inferences that the district court specifically declined to make. It found that there was no evidence on those points. And this court, on review, is required to take the facts in the inferences most favorable to the decision of the district court. So this court cannot engage in this kind of speculative inferences about what might have been and what might, in another case, be sufficient to establish a reasonable expectation of privacy. And so in the government's view, you aren't able to go further because none of the facts would allow you to determine whether there are circumstances in attachment to the property, a living arrangement, an arrangement for the storage of the belongings that would give rise to a reasonable expectation of privacy in a place that, at the moment, he agrees he had no right to be. And that that essentially ends the analysis. Does the court have any other questions with respect to the remaining issues which are briefed in our... Are you asking that we adopt a rule that if it is in a place he had no right to be that is per se not an objective expectation of privacy? No. No, we would not because the analysis necessarily relies on the totality of the circumstances. And we understand that there are circumstances in which either the arrangements of the parties, historical practice of the parties, or just general societal understandings might suggest that there would be a continuing expectation of privacy. And one can imagine circumstances where a person has been living a tentative record for years that they're asked to leave and do they, at that moment, have to take everything out. That's not this case. The cases, those cases would be... What do you say is our standard of review here? Well, it's de novo as to whether based on the facts and circumstances established and the inferences drawn below, it meets the standard of reasonable expectation of privacy under the legal standard. But the inferences in standard of view are drawn in favor of the ruling of the district court. Okay. Thank you, Your Honors. Thank you. At this time, if Attorney Hossein would introduce herself back on the record. She has a two-minute rebuttal. Samia Hossein for the appellant, Howard John. The government points to societal understandings as providing a basis for finding a reasonable expectation of privacy. And, again, I would point out that this is a scenario that is not uncommon, that people have romantic relationships that are complex and, you know, in a situation where people... Did the government just disavow any argument that because he had no permission to be there, that that alone does not resolve the case? That is correct, Your Honor, and we would agree with that position that... Then what is your argument? Our argument is that where Mr. John had sufficient ties, there is information in the record that he had ties to this location. Evidence of express permission is not required to find a reasonable expectation of privacy, particularly where... We don't know what ties mean. We know that they had a relationship. We know that he was there at some point. We don't know how long he was gone or the circumstances that resulted in his departure or what was said when he departed or what was said about him coming back, if he was going to come back and pick up his belongings, or if his belongings should have been deemed abandoned. We don't know any of that. Well, I think we do know that they weren't abandoned and that he hid them. He came back to retrieve them. And as we pointed out, the late checkout cases provide some support for that. As far as the specifics of why he was kicked out and when he returned, again, I would say that the societal understandings of how romantic relationships function, the relationship itself provides some grounding for the ties to the apartment. Again, his young son lives there. You chose not, or your office chose not to put any facts in the record, which sort of suggests that the best case you possibly had was the police report. We have relied on the police report, yes, Your Honor. Yes, you have. Okay. Thank you. Thank you. That concludes argument in this case.